In re H. Gary **BERLIN**, t/d/b/a Southeast Pittsburgh Restaurant Partnership, and t/d/b/a Inter City Restaurant Partnership, Debtor

U.S. WEST FINANCIAL SERVICES, INC., Movant,

v.

H. Gary **BERLIN**, Respondent.

Motion No. 92–3517M.
Bankruptcy No. 92–25304–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

March 19, 1993.

Robert G. Sable, Michael Kaminski, Sable, Makoroff & Gusky, Pittsburgh, PA, for debtor.

David A. Scott, Craig W. Frischman, Thorp, Reed & Armstrong, Pittsburgh, PA, for U.S. West Financial Services, Inc.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the court is an omnibus document entitled *Motion For Determination Of Inapplicability Of Automatic Stay, Objection To Notice Of Amendment Of Caption And Motion For Payment Of Rents* filed by U.S. West Financial Services, Inc. ("U.S. West"). U.S. West seeks, among

other things, a determination that mortgage foreclosure actions and/or sheriff's sales of certain real properties brought by it are not subject to the automatic stay because the properties are not property of the bankruptcy estate.

Debtor opposes the relief requested by U.S. West. According to debtor, he had at least an equitable interest in the partnership property in question which is protected by the automatic stay.

The motion by U.S. West will be granted. The court finds, for reasons set forth below, that debtor's bankruptcy filing does *not* prohibit U.S. West from taking action against the properties in state court.

–I–

**FACTS**

On December 14, 1986, debtor and Joseph P. Nascone formed general partnerships known as Southeast Pittsburgh Restaurant Partnership ("Southeast") and Inter City Restaurant Partnership ("Inter City"). Debtor and Nascone were the only members of the partnerships. The specifics of the partnership agreements are not known.

Southeast subsequently acquired real property located at 450 Clairton Boulevard, Pleasant Hills, Pennsylvania, upon which a Burger King Restaurant was erected. Inter City subsequently acquired real property located at 725 Allegheny Avenue, Pittsburgh, Pennsylvania, upon which a Burger King Restaurant also was erected.

Acquisition of these properties was financed through loans provided by Westinghouse Credit Corporation ("WCC").

On July 17, 1987, Inter City executed a promissory note in favor of WCC, a mortgage in favor of WCC on the property located at 450 Clairton Boulevard, and an assignment of leases, rents, and profits derived from the premises.

On August 13, 1987, Southeast executed a promissory note in favor of WCC, a mortgage on the property located at 725 Allegheny Avenue, and an assignment of leases, rents, and profits derived from the premises.

WCC subsequently assigned the above notes, mortgages, and assignments to U.S. West.

Southeast and Inter City defaulted on the notes in July of 1991. No payments on the notes have been made since then.

On October 22, 1991, U.S. West confessed judgment in the amount of $1,001,470.07 plus interest and costs in state court against Inter City, debtor, and Nascone.

U.S. West also confessed judgment that same day in the amount of $838,541.99 plus interest and costs in state court against Southeast, debtor, and Nascone.

Southeast, Inter City, debtor, and Nascone filed petitions in state court on October 29, 1991 to strike the judgments and/or for a rule to show cause why the confessed judgments should not be opened. Debtor and Nascone sought to have the judgments stricken on the ground that entry of judgment against them individually exceeded the warrant of attorney granted to U.S. West. Specifically, they argued that the documents in question had been executed by them exclusively in their capacity as general partners, not as individuals. The rules to show cause subsequently were discharged and the above judgments were confirmed with minor modifications.

U.S. West commenced mortgage foreclosure actions against Southeast and Inter City on November 25, 1991 in the United States District Court for the Western District of Pennsylvania.

On February 18, 1992, debtor and Nascone executed a document entitled "Transfer Of Partnership Interest Of Joseph P. Nascone In Inter City Restaurant Partnership" and another entitled "Transfer Of Partnership Interest Of Joseph P. Nascone In Southeast Pittsburgh Restaurant Partnership" ("transfer agreements"). The documents are identical in all respects herein relevant.

Paragraph 1 of the Southeast transfer agreement provided as follows:

Effective as of the date of this Agreement, the Partnership between Nascone and Berlin known as Southeast Pitts-

burgh Restaurant Partnership shall cease to exist and henceforth, Berlin shall continue in business as a proprietorship under the designation "Southeast Pittsburgh Restaurant Partnership".

Paragraph 1 of the Inter City transfer agreement was identical in all relevant respects. It provided that Inter City would cease to exist as of that date and that debtor would continue in business as a sole proprietorship using Inter City's name.

Paragraph 2 of both transfer agreements were identical and provided as follows:

Effective as of the date of this Agreement, Nascone hereby sells, assigns and transfers to Berlin all of his right, title and interest in and to Partnership property, assets (including bank balances), accounts receivable, claims, contract rights, records, leases, trade names and books of account.

Paragraph 3 of both transfer agreements provided as follows:

Effective as of the date of this Agreement, Berlin hereby assumes all of the debts and obligations of the Partnership and shall indemnify and hold Nascone harmless from any and all claims in respect to the Partnership business.

Paragraph 4 of both transfer agreements provided that Nascone acknowledged and agreed that:

... he is entitled to the receipt of no money from Berlin for the sale, transfer and assignment of his partnership interest to Berlin.

On July 29, 1992, a consent judgment in the mortgage foreclosure action brought against Inter City in the district court was entered in favor of U.S. West in the amount of $951,813.88. A consent judgment in the mortgage foreclosure action against Southeast also was entered that same day in favor of U.S. West in the amount of $795,986.86. Execution of the judgments was stayed by consent of the parties for thirty (30) days.

Debtor filed a voluntary chapter 11 bankruptcy petition on December 4, 1992. The caption of the case as originally filed reads as follows:

In re:

H. Gary Berlin

The automatic stay was issued that same day. No schedules or statements were included with the petition when it was filed.

On December 7, 1992, debtor filed a notice of amendment of the caption in this case to:

In re:

H. Gary Berlin, t/d/b/a Southeast Pittsburgh Restaurant Partnership and t/d/b/a Inter City Restaurant Partnership

A sheriff's sale of the properties located at 450 Clairton Boulevard and at 725 Allegheny Avenue which had been scheduled for December 7, 1992 was not conducted due to the amendment of the caption.

On December 28, 1992, debtor filed the required schedules and statements. In summary, debtor's assets and liabilities are divided generally into two classifications: (1) Schedule A, Real Property, listed the properties located at 450 Clairton Boulevard and 725 Allegheny Avenue as estate assets; and (2) Schedule C, Creditors Holding Claims, listed U.S. West as holding mortgages on these properties. Debtor contemplates that these assets and liabilities will be the subject of this bankruptcy reorganization.

Additionally, debtor owns jointly with his non-debtor wife a residence valued at $275,000.00, a bank account containing $31,084.00, and a Mercedes Benz motor vehicle valued at $33,000.00, as well as household furnishings valued at $7,000.00. Debtor has elected his state exemptions and accordingly claims these latter assets as exempt property.

–II–

ANALYSIS

The filing of the voluntary chapter 11 petition on December 4, 1992 automatically stayed enforcement against debtor or against property of the bankruptcy estate of any judgment obtained before the filing of the petition, as well as any act to enforce against property of the debtor a lien to the extent that it secures a claim that

arose prior to the filing of the petition. *See* 11 U.S.C. section 362(a)(2)(5). Any legal or equitable interest in property that debtor had as of the commencement of the case is property of the bankruptcy estate. *See* 11 U.S.C. section 541(a)(1).

U.S. West asserts that the automatic stay does not apply to actions taken by it with respect to the two properties on which it holds mortgages of records. The court's reconstruction of U.S. West's argument in support of its position goes as follows:

(1) the partnerships which held title to the properties were still in existence as of the filing of the voluntary chapter 11 petition on December 4, 1992. The transfer agreements merely dissolved the partnerships but did not terminate them;

(2) although the interest of a debtor who is a member of an existing partnership in that partnership is property of the bankruptcy estate, the assets and property of that partnership are not property of the estate;

(3) the automatic stay applies only to property of the bankruptcy estate or of the debtor;

(4) consequently, since the two properties are neither property of the bankruptcy estate nor property of the debtor, the automatic stay does not apply to actions taken by U.S. West with respect to those properties.

Debtor insists that the automatic stay does apply to those properties. He concedes (2) and (3), above, but denies that (1) is true.

Debtor concedes that the automatic stay would not apply *if* he claimed an interest in the two properties solely on the basis of his interest in the two partnerships which held title to the properties. He denies, however, that his interest in the properties is based on his membership in the two partnerships. Rather, debtor maintains that he had at least an equitable interest in the properties as a result of the transfer agreements of February 18, 1992. According to debtor, the two partnerships "ceased to exist" at that time and Nascone sold to debtor for valuable consideration his interest in the assets and property of the terminated partnerships. The automatic stay applies to the properties, debtor concludes, because of the equitable interest he acquired in them at that time.

■ Pennsylvania law distinguishes between dissolution of a general partnership and its termination. Dissolution is not *ipso facto* termination. *See North Star Coal Co. v. Eddy*, 442 Pa. 583, 586, 277 A.2d 154, 156 (1971). Dissolution is defined as:

... the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on, as distinguished from the winding up, of the business.

15 Pa.C.S.A. § 8351 (Purdon's Supp.1992). A partnership is not automatically terminated upon its dissolution. Rather, it continues to exist until the winding up of partnership affairs has been completed. *See* 15 Pa.C.S.A. § 8352 (Purdon's Supp. 1992).

■ This distinction has potentially significant ramifications for what is and is not included in the bankruptcy estate of a debtor who is a member of an existing partnership. The general rule is that although the interest of a debtor in a partnership is estate property, any property owned by the partnership itself is *not* estate property:

Where debtor is a member of a partnership, the debtor's interest in the partnership is included in the estate. However, assets held by the partnership itself are *not* included in the estate (emphasis added).

*E.A. Martin Machinery Co. v. Williams*, 875 F.2d 668, 670 (8th Cir.1989). *Accord, Matter of Pentell*, 777 F.2d 1281, 1285 (7th Cir.1985). Partnership assets are *not* administered in the bankruptcy case of a member of the partnership. *See In re Olszewski*, 124 B.R. 743, 746 (Bankr. S.D.Ohio 1991).

The reason for this principle is that a partner's rights in partnership property are not superior to the rights of the partnership's creditors. *Id.* "Until the creditors of the partnership are satisfied, each part-

ner has no right to any distribution from the partnership." *Johnson v. Investment Leasing, Inc. (In re Johnson),* 51 B.R. 220, 222 (Bankr.D.Colo.1985).

The realty at issue in this case unquestionably was partnership property prior to execution of the transfer agreements on February 18, 1992. Both properties were purchased "on account of the partnership". *See* 15 Pa.C.S.A. § 8313(a) (Purdon's Supp. 1992). Moreover, they were acquired with funds the partnership borrowed from WCC. *See* 15 Pa.C.S.A. § 8313(b) (Purdon's Supp. 1992).

Debtor's contention that he acquired a property interest in the realty by virtue of the transfer agreements is without merit for several reasons.

■ In paragraph 2 of the above transfer agreements, Nascone transferred to debtor "all of his [i.e., Nascone's] right, title and interest in and to Partnership property ...". The interest of a partner in a partnership is defined under Pennsylvania law as follows:

The interest of a partner in the partnership is his share of the profits and surplus and that interest is personal property.

15 Pa.C.S.A. § 8343 (Purdon's Supp.1992). The transfer agreements did *not* have the effect of transferring to debtor any interest in the realty that Nascone had. Nascone had no such interest. All he could transfer to debtor was his interest in the profits and surplus of the partnership.

■ Moreover, even if the transfer agreements did effectively terminate the partnerships, they did *not* have the legal effect of vesting debtor with any interest in the realty owned by the partnerships.

■ Pennsylvania law identifies partnership assets for purposes of settling accounts between partners after dissolution and prescribes the order in which partnership liabilities are to be paid from those assets:

In settling accounts between the partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary:

(1) The assets of the partnership are:

(i) the partnership property.

(ii) The contributions of the partners necessary for the payment of all the liabilities specified in paragraph (2).

(2) The liabilities of the partnership shall rank, in order of payment as follows:

(i) Those owing to creditors other than partners.

(ii) Those owing to partners other than for capital and profits.

(iii) Those owing to partners in respect of capital.

(iv) Those owing to partners in respect of profits.

(3) The assets shall be applied, in order of their declaration in paragraph (1), to the satisfaction of the liabilities.

15 Pa.C.S.A. § 8362 (Purdon's Supp.1992). A partner's rights in partnership assets after dissolution are subordinate to those of partnership creditors. Partners have no right to distribution from partnership assets until the partnership's creditors have been satisfied. *See In re Johnson,* 51 B.R. at 222.

The transfer agreements made no provision for satisfying partnership creditors, including U.S. West. Rather, the agreements attempted to transfer partnership assets, including the realty, *without* first satisfying U.S. West and other creditors from those assets. The transfer agreements were a blatant, albeit ineffectual, attempt to avoid satisfying U.S. West out of partnership assets and to force U.S. West to come before this court in order to have the obligation to it satisfied. A review of the file unequivocally indicates that no other purpose was served by this bankruptcy filing.

■ It must be concluded that debtor did *not* acquire a property interest in the realty at issue here by virtue of the transfer agreements because creditors of the partnerships were not satisfied first from the partnerships' assets. Accordingly, because these properties are not property of the bankruptcy estate for purposes of 11 U.S.C. section 541(a), the automatic stay

does *not* apply to them. Debtor's bankruptcy filing does not prohibit U.S. West from pursuing its remedies with respect to the properties in state court.

Finally, it is not necessary in light of this determination to consider the alternative relief sought by U.S. West in its motion.

An appropriate order shall be issued.

### ORDER OF COURT

AND NOW at Pittsburgh this 19th day of March, 1993, in accordance with the accompanying Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that real property located at 450 Clairton Boulevard, Pleasant Hills, Pennsylvania, and at 725 Allegheny Avenue, Pittsburgh, Pennsylvania, are *not* property of debtor's bankruptcy estate and, accordingly, are *not* subject to the automatic stay. U.S. West Financial Services, Inc. is *not* prohibited from pursuing in state court remedies available to it with respect to said properties.

IT IS SO **ORDERED.**