**In re JONES & McCLAIN, LLP, Alleged Debtor.**

**Thomas J. McClain and Jones & McClain, LLP, Movants,**

**v.**

**Jonathan E. Jones, Ronald B. Roteman, and Campbell & Levine, LLC, Respondents.**

**No. 01–29104–BM.**

United States Bankruptcy Court, W.D. Pennsylvania.

Dec. 20, 2001.

1990) (stating that material alteration only releases guarantor when made without his consent).

Ronald B. Roteman, Pittsburgh, PA, for Jonathan Jones.

Scott M. Hare, Pittsburgh, PA, for Thomas McClain.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Thomas J. McClain (hereinafter "McClain"), a general partner in the law firm Jones & McClain, LLP (hereinafter "law partnership"), against which Jonathan E. Jones (hereinafter "Jones"), the other general partner, has brought an involuntary bankruptcy petition, has brought two motions in this matter. McClain has brought a motion to disqualify the attorney representing Jones and the law firm to which the attorney belongs from representing Jones in any further proceedings in this case. McClain also has brought a motion to dismiss the involuntary petition. Jones opposes both motions.

We will, for reasons set forth below, grant the motion to disqualify and will deny the motion to dismiss.

## – FACTS –

Jones & McClain, a law partnership which was created in April of 2000, represented plaintiffs in personal injury actions on a contingent fee basis. Jones and McClain were its general partners. Partnership revenues were derived primarily from fees in cases that it personally handled as well as cases it referred to other attorneys.

The relationship between Jones and McClain soured as the fortunes of their partnership rapidly declined within a year of the partnership's formation. On March 27, 2001, Jones sent a fax to Stanley E. Levine, Esq., of the law firm Campbell & Levine inquiring whether Jones himself had the ability to put the law partnership into involuntary bankruptcy. Jones scathingly stated in the fax that getting McClain to participate in a voluntary petition was "a time wasting exercise". McClain, Jones continued, was not capable of making such a decision; could not grasp the more subtle points, the strategy, and the interrelationship of variables; and would paralyze the decision-making process if he actively participated in the process. Jones further stated that he had no confidence in McClain and that McClain's actions would be detrimental to Jones' interest.

At the behest of Jones, the partners met with Ronald Roteman, Esq., from the law firm Campbell & Levine at Roteman's office. Stanley Levine also joined them at some point during the meeting, which meeting lasted approximately two hours. Among other things, they discussed the debts of the law partnership and the anticipated lack of incoming revenues in the immediate future.

McClain also revealed his personal, privileged, and confidential information to Roteman and Levine. Among other things, he disclosed information concerning an IRA, a money market account, and his personal debts, including a debt guaranteed by his father. Roteman and Levine explained the concept of a preferential transfer to McClain and advised him concerning which debts he could safely pay in anticipation of filing for bankruptcy. They recommended at the conclusion of the meeting that Jones and McClain each file individual voluntary bankruptcy petitions and that they file one on behalf of the law partnership.

At no time did McClain or the law partnership execute an agreement to retain Roteman and Campbell & Levine as their attorney. They were never billed for their consultation with Roteman and Levine.

McClain subsequently informed Roteman that he would not file a personal voluntary bankruptcy petition or a voluntary petition on behalf of the law partnership and stated that he would adamantly oppose any involuntary petition brought against the law partnership.

Jones, however, followed the recommendation of Roteman and Campbell & Levine and filed a personal voluntary chapter 7 petition on June 22, 2001. The voluntary petition was prepared on Jones' behalf by Roteman.

On August 31, 2001, an involuntary chapter 7 petition was brought against the law partnership Jones & McClain, LLP. The petition was brought by Jones, presumably pursuant to § 303(b)(3)(A), and was prepared by Roteman. An order issued that same day designating Jones as the principal operating officer of Jones & McClain.

On September 27, 2001, McClain brought the present motion to dismiss the involuntary chapter 7 petition Jones had brought against the law partnership. On November 7, 2001, McClain also brought a motion to disqualify Roteman and Campbell & Levine from further representing Jones in this bankruptcy proceeding.

An evidentiary hearing on McClain's motions was held on November 9, 2001, at which time both Jones and McClain testified.

## – DISCUSSION –

### I.) Motion To Disqualify Counsel.

█ McClain asserts that he and the law firm Jones & McClain had an attorney-client relationship with Roteman and Campbell & Levine as a consequence of the meeting held in early-April of 2001. After they had disclosed their respective financial situations, Roteman and Campbell & Levine advised McClain individually and the law partnership Jones & McClain to file voluntary bankruptcy petitions.

There was, we previously noted, no express agreement whereby Roteman and Campbell & Levine were retained to serve as legal counsel to McClain and to the law partnership concerning the filing of voluntary bankruptcy petitions. Moreover, they were never billed for the advice received.

The absence of such an agreement is not necessarily fatal to McClain's assertion that Roteman and Campbell & Levine had an attorney-client relationship with

McClain and the law partnership in this regard. An implied attorney-client relationship exists even in the absence of any such express agreement if: (1) the alleged client sought legal advice and assistance from the alleged attorney; (2) the advice sought was within the professional competence of the alleged attorney; (3) the alleged attorney agreed, either expressly or by implication, to provide such advice; and (4) the alleged client reasonably believed that the alleged attorney was representing the alleged client. *Cost v. Cost*, 450 Pa.Super. 685, 691–92, 677 A.2d 1250, 1254 (1996), *appeal denied*, 547 Pa. 727, 689 A.2d 233 (1997).

Each of these requirements is satisfied in this instance.

At the urging of Jones, McClain and the law partnership sought advice from Roteman and Campbell & Levine concerning whether they should file voluntary bankruptcy petitions.

The advice sought unquestionably was within the professional competence of Roteman and Campbell & Levine, who have represented numerous debtors and numerous creditors in bankruptcy matters before this court.

Roteman and Campbell & Levine undoubtedly agreed to provide professional advice concerning the advisability of McClain and the law partnership filing voluntary bankruptcy petitions. After reviewing and discussing their financial situations with them, Roteman and Campbell & Levine recommended that McClain and the law partnership file such petitions.

Finally, it was entirely reasonable for McClain and the law partnership to believe that Roteman and Campbell & Levine were acting as their attorney when it so advised them. Such advice lay squarely within the expertise of Roteman and Campbell & Levine and was given only after they had reviewed and discussed the financial situations of McClain and of the law partnership.

We conclude in light of the foregoing that Roteman and Campbell & Levine had an attorney-client relationship with McClain and the law firm Jones & McClain as a result of what transpired at the meeting that took place early in April of 2001.

According to Pennsylvania law:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

Rule of Professional Conduct 1.7, 42 Pa. C.S.A.

Roteman's and Campbell & Levine's representation of Jones in bringing the above involuntary petition against the law partnership, we conclude, would be "directly adverse" to McClain as a general partner in the law firm Jones & McClain.

The law partnership was dissolved by operation of law when Jones filed his own personal voluntary chapter 7 petition on June 22, 2001. 15 Pa.C.S.A. § 8353(5).

Dissolution of a partnership is a change in the relation of the partners caused by any partner ceasing to be associated with the carrying on of partnership business. 15 Pa.C.S.A. § 8351. The partnership is not automatically terminated when dissolution occurs. 15 Pa.C.S.A. § 8352; *In re Berlin*, 151 B.R. 719, 723 (Bankr.W.D.Pa.1993).

The winding up of its affairs is the sole business of a dissolved partner-

ship. Although it remains liable for its pre-dissolution debts, a dissolved partnership generally does not incur any post-dissolution debts unless they relate to the winding-up process. *Teamsters Pension Trust Fund of Philadelphia v. Brigadier Leasing Associates,* 880 F.Supp. 388, 400 (E.D.Pa.1995). Authority to act on behalf of the partnership is limited to completing transactions begun but not yet completed when dissolution occurs. *North Star Coal Co. v. Eddy,* 442 Pa. 583, 586, 277 A.2d 154, 156 (1971).

■■■■ A partnership's assets consist of: (1) partnership property; and (2) contributions by partners required to pay all partnership debts. 15 Pa.C.S.A. § 8362(1). Debts owed by the partnership to creditors who are not partners have priority over debts owed to creditors who are partners. 15 Pa.C.S.A. § 8362(2). Partnership property shall be utilized ahead of contributions from partners to pay partnership creditors. 15 Pa.C.S.A. § 8362(3). If some, but not all of the partners are insolvent, other partners must contribute their own share to pay these debts as well as any additional amount required to pay partnership debts. 15 Pa.C.S.A. § 8362(4).

■■■■ Using the above law of Pennsylvania as a backdrop, we conclude that Roteman's and Campbell & Levine's representation of Jones in bringing the above involuntary petition against the law partnership most likely will have a directly adverse affect on movant McClain, in violation of Rule of Professional Conduct 1.7(a).

To the extent that partnership property is not sufficient to pay debts it owes to creditors who are not partners, Jones and McClain will be required to pay them. To the extent that Jones is unable to make such a contribution from his own assets due to his insolvency, McClain will be required to contribute his own share to pay partnership debts as well as Jones' share.

Because he has filed a bankruptcy petition, the automatic stay will prevent partnership creditors from taking action against Jones individually to satisfy partnership debts. The same is not true of movant McClain, who rejected the advice of Roteman and Campbell & Levine to file his own voluntary bankruptcy petition. He is not protected by the automatic stay and therefore presumably would be vulnerable to action taken against his personal assets to satisfy his portion of partnership debts as well as Jones' portion.

Roteman's and Campbell & Levine's attorney-client relationship with Jones, in other words, will almost certainly have a directly adverse effect on McClain, with whom it also has an attorney-client relationship. Their representation of Jones in bringing the above involuntary petition against the partnership would, under the above scenario, be directly prejudicial to McClain.

It therefore follows that, *unless* the exception set forth at 1.7(a)(1) and (2) applies, the general principle found at Rule of Professional Conduct 1.7(a) applies. We conclude that the conjunctive conditions which are required for this exception to apply are not satisfied in this instance.

Roteman and Campbell & Levine could *not* have reasonably believed that their representation of Jones in bringing an involuntary petition against the law partnership would not adversely affect their relationship with McClain in light of his known refusal to file his own personal voluntary bankruptcy petition. Given their extensive experience in bankruptcy matters, they should have known that McClain would be vulnerable to action by the law partnership's creditors to collect his contribution for partnership debts whereas Jones would

be shielded from such action by the automatic stay.

Also, the memo Jones faxed to Stanley Levine on March 27, 2001, makes clear that Jones was interested in filing an involuntary petition against the law partnership because he expected McClain to oppose the filing of a voluntary petition on its behalf. Jones further stated that McClain's opposition was contrary to Jones' interest. These remarks should have placed Roteman and Campbell & Levine on notice that Jones and movant McClain were seriously at odds with one another and that their interests were most likely were irreconcilably different.

Even if Roteman and Campbell & Levine could reasonably have so believed, the second required condition for the exception to the general principle set forth at Rule 1.7(a) obviously was not satisfied in this instance. Roteman and Campbell & Levine did **not** consult with McClain concerning the filing of the *in*voluntary petition against the law partnership. The meeting that took place early in April of 2001, concerned the filing of a voluntary petition on behalf of the partnership. Moreover, McClain never gave his consent to the filing of the involuntary petition. Roteman and Campbell & Levine betrayed the loyalty they owed to their client McClain when they brought the involuntary petition on behalf of their other client—i.e., Jones.

We conclude in light of the foregoing that the exception to the general principle found at Rule 1.7(a) does not apply and that Roteman's and Campbell & Levine's representation of Jones in bringing an involuntary petition against the law partnership amounted to a conflict of interest, in violation of Rule 1.7(a).

The outcome would be the same even if McClain were merely a **former** client instead of a current client of Roteman and Campbell & Levine when they filed the above involuntary petition on behalf of Jones. Movant McClain had rejected their advice, given early in April of 2001, that he and the partnership both file voluntary bankruptcy petitions. One might infer from this that McClain was no longer their client when, some four months later, they represented Jones in bringing the involuntary petition.

Rule of Professional Conduct 1.9, 42 Pa. C.S.A., provides in part as follows:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation.

The interest of Jones in bringing an involuntary petition against the law partnership was materially adverse to the interests of McClain. As we have seen, Jones would be discharged from his liability for partnership debts and would be protected by the automatic stay against actions by creditors of the law partnership to satisfy the partnership's unpaid liabilities from his assets. McClain, by contrast, would not be similarly discharged from his liability for partnership debts because he did not file a bankruptcy petition and, consequently, would not be similarly protected by the automatic stay.

The exception to the general principle found at Rule 1.9 does not apply. As we have seen, McClain was never consulted about the involuntary petition against the partnership and did not consent thereto.

 The prohibition against Roteman's representation of Jones in this case applies with equal force to any other lawyers associated with Campbell & Levine. *See* Rule

of Professional Conduct 1.10(a), 42 Pa. C.S.A.[1]

Because their representation of Jones in this case is in violation of Rule 1.7(a) or Rule 1.9(a), Roteman and all others lawyers associated with the law firm Campbell & Levine also must withdraw as counsel to Jones with respect to any future proceedings in this bankruptcy case involving Jones & McClain. *See* Rule of Professional Conduct 1.16(a)(1), 42 Pa.C.S.A.[2]

We will issue an order directing them to do so.

## II.) Motion To Dismiss The Involuntary Petition.

Section 303 of the Bankruptcy Code provides in part as follows:

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if–

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute.

11 U.S.C. § 303(h).

 In his capacity as a general partner of Jones & McClain, McClain may contest the above involuntary petition. Federal Rule of Bankruptcy Procedure 1011(a). It is undisputed that he has done so in a timely manner. McClain apparently concedes that the law partnership's debts are not disputed. He does not contend that any of its debts are subject to bona fide dispute.

McClain asserted in his motion two grounds in support of dismissal. He denied that the partnership was generally not paying its debts as they became due. In addition, he asserted that it would be "inequitable" for the law partnership to receive a bankruptcy discharge when fees it expects to receive in the future from cases it assigned to other counsel for prosecution will suffice for the law partnership to pay its debts in full.

 Evidence presented at trial indicates that the law partnership generally was *not* paying its debts as they became due. Jones offered into evidence a "schedule" purporting to list the law partnership's past-due debts as of the filing of the involuntary bankruptcy petition. The list contained some fifty past-due debts totaling approximately $93,000.00.

McClain did not object to the admissibility of the "schedule" and, more significantly, did not contest its accuracy. In particular, he did not dispute the number of debts listed or their amounts and did not contest the allegation that all were past due when the involuntary petition was filed. McClain instead testified that fees the law partnership could in the future expect to collect from cases it had referred to other attorneys for prosecution will

1. Rule of Professional Conduct 1.10(a), 42 Pa.C.S. A., provides in part as follows:
 (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 [or] Y 1.9Y.

2. Rule of Professional Conduct 1.16(a)(1), 42 Pa.C.S.A., provides in part as follows:

[A] lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
 (1) the representation will result in violation of the rules of professional conduct Y.

more than suffice to pay in full all of the law partnership's past-due debts as well as all its future debts as they become due.

Such testimony in effect *concedes* that the above-listed pre-petition partnership debts were not paid as they became due. Moreover, we do not find credible McClain's assurance that fees collected in the future will suffice in this regard. His optimistic testimony in this regard appears to be chimerical thinking.

 Even if his testimony in this regard were credible, as opposed to overly optimistic, it is not relevant to the issue whether we should enter an order for relief in this case. McClain's assertion that it would be "inequitable" to grant the law partnership a bankruptcy discharge because in the future it will be able to pay its past-due pre-petition debts has no bearing on whether the involuntary petition should be dismissed in accordance with § 303(h)(1). Although bankruptcy proceedings undoubtedly are equitable in nature, we do not have "free-floating discretion" to act in accordance with our personal view of what is just and fair, however enlightened our view may be. *U.S. v. Pepperman*, 976 F.2d 123, 131 (3d Cir. 1992).

In light of the foregoing, we will deny McClain's motion to dismiss the involuntary petition and will enter an order for relief under chapter 7 of the Bankruptcy Code.

 We recognize that it is for the United States trustee instead of this court to select the chapter 7 trustee who will take control of and will liquidate the partnership's assets and then make distribution to its creditors. Notwithstanding this recognition, we urge the United States trustee to appoint a chapter 7 trustee who will vigorously participate in what we anticipate will be highly contentious disputes concerning ownership of the inventory of the law partnership.

For instance, the law firm to which Jones and McClain belonged before they formed their own law partnership in April of 2000, has asserted in Jones' personal bankruptcy case that the cases referred to other counsel belong to it, not to Jones and McClain individually or to the law partnership of Jones & McClain. This dispute remains to be resolved.

If these referred cases are property of this debtor's bankruptcy estate, we also have to wonder whether outside counsel to whom the cases were referred are entitled to retain any portion of what they have recovered from successfully prosecuting them. In particular, we are left to wonder whether this arrangement with outside counsel amounts to impermissible fee splitting. Even if it is permissible, in light of *Matter of Arkansas Co., Inc.*, 798 F.2d 645 (3d Cir.1986) and *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99 (3d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988) and their progeny, we are left to wonder whether outside counsel is entitled to any compensation in the absence of an order from this court approving outside counsel's retention and counsel's fee petition.

An industrious trustee with the steel backbone of a trial lawyer is needed in this case.

An appropriate order shall issue.