677 A.2d 1250

**Lorraine M. COST, an individual, Appellant**

v.

**Georgia L. COST, a/k/a Georgia L. Pawk, an individual, Richard G. Kotarba, Esquire and Meyer, Unkovic & Scott, Appellees.**

Superior Court of Pennsylvania.

Argued April 10, 1996.

Filed June 13, 1996.

Jonathan P. Clunies, Pittsburgh, for appellant.

Michael R. Plummer, Pittsburgh, for Georgia Cost, appellee.

Victor J. Sullivan, Pittsburgh, for Kotarba, appellees.

Before DEL SOLE, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge.

This case involves an appeal by the plaintiff/appellant, Lorraine M. Cost, from the order of the Court of Common Pleas of Allegheny County granting preliminary objections in the nature of a demurrer in this attorney-malpractice action. We affirm.

A demurrer is an assertion that a complaint does not set forth a cause of action or a claim upon which relief can be granted. In disposing of a demurrer every well-pleaded, material, relevant fact set forth in the pleading to which it is filed, together with all reasonable inference therefrom, is admitted as true. A demurrer will only be sustained where a complaint or pleading shows with certainty that upon the facts averred therein, the law will not permit the plaintiff or pleading party to recover. [Citations omitted]

*Del Boring Tire Service, Inc. v. Barr Machine, Inc.,* 285 Pa.Super. 66, 426 A.2d 1143, 1146 (1981). Where doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *DeGenova v. Ansel,* 382 Pa.Super. 213, 555 A.2d 147, 149 (1988).

With the preceding standard of review in mind, the pleadings indicate that on March 15, 1996, the plaintiff filed a complaint [1] alleging professional negligence on the part of Attorneys Georgia L. Cost, a/k/a Georgia L. Pawk, Richard G. Kotarba and the law firm of Meyer, Unkovic & Scott, for whom Kotarba was employed, regarding the "buyout" of Anthony C. Cost's ownership interests in various family businesses. [2] To complete the transaction, various agreements had to be signed by all interested parties, one of whom was the plaintiff as spouse of Frank A. Cost. Plaintiff was asked to execute "spousal joinder" forms creating an indemnification

---

1. This cause of action was commenced by the filing of a writ of summons, followed by a rule to file a complaint which is the subject of the present appeal.

2. Anthony C. Cost is a cousin of the buyers/brothers Charles and Frank A. Cost, the latter of whom is defendant/Pawk's uncle.

obligation and release on the part of the plaintiff in favor of the "Anthony parties." [3]

More specifically, the plaintiff claimed that the attorneys representing the partners and entities in the sale of the Cost businesses *owed her a duty*, "as counsel to the various family businesses, to explain to Plaintiff what was going on in the transaction at or prior to the execution of the aforementioned documents." As a result of counsels' failure to advise the plaintiff of the ramifications of the transaction, the plaintiff allegedly "incurr[ed] substantial liability to the Anthony parties in the form of certain tax indemnifications for various liabilities of companies as well as attorneys fees and expert expenses in Plaintiff's subsequent efforts to undo the effect of said indemnifications." See Complaint, Paragraphs 20, 22, 35 & 38. All of which, claimed the plaintiff, amounted to negligent behavior by counsel in breaching a duty of professionalism owed to complainant and exposed each to legal malpractice. *Id.* at 23 & 39.

The first set of preliminary objections were granted without prejudice to file an amended complaint,[4] which was submitted on June 5, 1996, asserting that the defendants/Pawk, Kotarba and Meyer, Unkovic & Scott acted as counsel for the Cost entities (Cost Corp., Cost Realty, C & F Partnership, C F & A Associates, and Anthony F. Cost & Sons, Inc.) and drafted documents surrounding the "buyout" of Anthony C. Cost's interest in the Cost enterprises by Frank A. and Charles L. Cost. The closing occurred in the appellant's absence. This necessitated the execution of various settlement, release, indemnification and spousal joinder documents by the plaintiff at the defendant/Pawk's office within a week after closing.

At no time, alleged the plaintiff, did the defendant/Pawk either "dispel Plaintiff's reasonable belief that Pawk was act-

---

3. The "Anthony parties" appear in the "Settlement and Mutual General Agreement," "Indemnification to First Party" and "Mutual Release Agreement" as Anthony C. Cost, Charles E. Cost and Thelma E. Cost, t/a C & A Partners.

4. The plaintiff's complaint as to the defendants Cost Realty, Charles L. Cost and Cost Corp. was dismissed with prejudice.

ing as Plaintiff's counsel" or offer to explain the import, operation, legal consequences or ramifications of the documents executed even though the defendant/Pawk had "knowledge that Plaintiff misunderstood Pawk's role in the transaction. . . ." Amended Complaint, Paragraphs 25, 31, 34 & 39. Therefore, as a result of this nonfeasance (breach of duty owed to inform plaintiff "of the ramifications of the transaction or her option to seek independent counsel"), the plaintiff averred she "*could be* directly exposed to income tax, interest and penalty liabilities of up to $1,764,000.00" to undo the effect of certain tax ramifications executed to insulate the "Anthony parties" as part of the Cost "buyout". *Id.,* Paragraph 47 (Emphasis added).

To the same effect, the plaintiff assigned professional negligence to Kotarba and his law firm (Meyer, Unkovic & Scott) in breaching a duty of representation and disclosure of the consequences of the Cost "buyout" or to seek independent counsel, the failure of which purportedly caused the plaintiff to "incur[ ] substantial liability to the Anthony parties in the form of certain tax indemnifications for various liabilities . . . attorneys fees and expert expenses . . . to undo the effect of said indemnifications." *Id.,* Paragraphs 74 & 96.

■ Preliminary objections were filed and granted by the court on grounds that no legal malpractice claims existed because: (1) there was no express contract for legal representation ("privity") between the plaintiff and Pawk/Kotarba; (3) the plaintiff never sought advice or assistance from Pawk/Kotarba; and (3) Pawk/Kotarba never expressly or impliedly agreed to serve as plaintiff's separate counsel. Likewise, the court held that the plaintiff could *not* "reasonably expect" that the defendants would describe the terms and legal significance of the various documents to be executed. Further, the court wrote:

In summary, plaintiff knew that Pawk/Kotarba had been retained by her husband Frank Cost and his brother Charles Cost to represent their interests and the interests of their business entities in the dispute with Anthony Cost and she knew that there was a settlement proposed by

Frank Cost and Charles Cost that required the signatures of Charles' wife and herself. Plaintiff also knew that Frank Cost and Charles Cost desired Frances Cost and plaintiff to sign the necessary documents. In this situation, there is no legal principle under which the lawyers retained would owe plaintiff the full panoply of obligations that a lawyer owes a client.

Court Opinion at 8–9. This appeal followed and raises, in essence, the yet unresolved question of, absent any written or oral contract of employment between counsel and complainant, what satisfies the "reasonable belief" criterion to withstand preliminary objections and fill the traditional contractual void sufficient to hold counsel liable for legal malpractice? Resolution of the query is to take place on a case-by-case basis after a review of the pleadings against the backdrop of the applicable law.

We begin our analysis with *Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744 (1983) (Plurality), wherein our Supreme Court retained "privity (an attorney-client or analogous professional relationship, or a specific undertaking) [as an element of proof necessary] to maintain an action in negligence for professional malpractice." The only exception being "a narrow class of third party beneficiaries ... under Restatement (Second) of Contracts § 302 where the intent to benefit is clear and the promisee (testator) is unable to enforce the contract." *Id.* at 51–52, 459 A.2d at 747.

At bar, the appellant does not seek third-party beneficiary status. Rather, her malpractice claim against the defendants/Pawk, Kotarba and Meyer, Unkovic & Scott is predicated upon principles of negligence. See Amended Complaint, Paragraphs 43, 45–48, 68–75 & 90–97. As such:

Attorney malpractice claims, whether civil or criminal, bear the traditional elements of a general claim of negligence—duty, breach, causation and damages. *Bailey v. Tucker*, [533] Pa. [237], 621 A.2d 108 (1993). Absent an express contract, an implied attorney-client relationship will be found if 1) the purported client sought advice or assistance

from the attorney; 2) the advice sought was within the attorney's professional competence; 3) the attorney expressly or impliedly agreed to render such assistance; and 4) it is reasonable for the putative client to believe the attorney was representing him. *Sheinkopf v. Stone,* 927 F.2d 1259 (1st Cir.1991).

*Atkinson v. Haug,* 424 Pa.Super. 406, 622 A.2d 983, 986 (1993).

Here, with regard to *Haug*'s Points Nos. 1, 2 & 3, the pleadings are clear that the plaintiff neither sought nor received "legal advice" or "assistance" from the defendants. See Amended Complaint, Paragraphs 33 ("At the time the documents were executed, Pawk simply displayed the documents to be executed ..., and Pawk stood opening each copy to the appropriate places while Plaintiff sat and signed as directed."); 34 ("At no time prior to or on the day of the execution by Plaintiff, did Pawk either explain or offer to explain to Plaintiff the import or operation of the documents she was being directed to sign nor the legal consequences and ramifications of Plaintiff's signature on the aforesaid document[s]."); 40 ("At no time did Pawk attempt to ascertain whether Plaintiff had any misunderstanding with regard to Pawk's role in the transaction or suggest that Plaintiff needed or should have separate counsel"); 46 ("... Pawk[ ] ... fail[ed] to inform Plaintiff of material facts...."); 47 ("... Pawk[ ] fail[ed] to advise Plaintiff of the ramifications of the transaction or options to seek independent counsel...."); 56 ("... Kotarba failed to communicate with the Plaintiff during the negotiations and drafting phase of the transaction...."); 57 ("... Kotarba neglected to communicate with the Plaintiff...."); 58 ("Plaintiff was never contacted by Kotarba prior to closing."); 59 ("At no time ... did Kotarba explain [anything to] ... Plaintiff [regarding] ... the aforementioned documents."); 73 ("... failure by Kotarba to inform Plaintiff of material facts ... [regarding] spousal joinder."); and 74 ("... failure of Kotarba to advise Plaintiff of the ramifications of the transactions....").

See also Plaintiff's Deposition attached to Defendants/Kotarba and Meyer, Unkovic & Scott's Preliminary Objections to Plaintiff's Amended Complaint at pages 48–51 (Indicating there was no direct or indirect contact with Kotarba or Meyer, Unkovic & Scott by the Plaintiff). To the same effect, regarding the lack of interaction between the plaintiff and the law firm, see Amended Complaint, Paragraphs 82–85 (No communication with plaintiff by law firm), 95 (Failure to inform plaintiff), and 95 (Failure to advise plaintiff).

Inasmuch as the pleadings fail to allege that the plaintiff "sought" legal assistance, which the defendants either expressly or impliedly agreed to render, this dispenses with the need to examine the last prong to *Haug*'s allowance of an implied attorney/client relationship. Even if, *arguendo,* such were not the case, it is evident from the Amended Complaint that the plaintiff's belief that the defendants represented her interests was a *subjective* one, which is insufficient to overcome the grant of preliminary objections. Cf. *Haug,* 424 Pa.Super. at 415, 622 A.2d at 987–988 ("Appellant's subjective belief an attorney/client relationship existed between [the appellant] and [Attorney] Haug is an insufficient basis upon which to find there existed a genuine issue of material fact precluding summary judgment.").

The "reasonable belief" referred to by the plaintiff has its origin in the rather nebulous concept that family ties (between plaintiff and defendant/Pawk), attorney status (of defendant/Pawk) and conduct ("demeanor" of defendant/Pawk during the execution of the documents) melded into a duty to protect the plaintiff's interests or "correct the misunderstanding" of representation and advise the plaintiff to seek independent counsel. See Amended Complaint, Paragraphs 39, 43 & 45. As for Kotarba: "Based upon Plaintiff's express information from Sonny [her husband], Kotarba's prior representation of various partnerships in which Plaintiff held an equitable interest by virtue of her marital estate and her receiving the phone call to come to Kotarba's offices at M[eyer,] U[nkovic

& ] S[cott] for the closing, Plaintiff believed that Kotarba was acting on behalf of Plaintiff to protect Plaintiff's interests in the Anthony [C. Cost] Buyout." [5] *Id.* at 66.

Nonetheless, the fact remains that the plaintiff never sought nor received legal assistance from any of the defendants either prior to or at the time of the "buyout" involving the Cost enterprises. This undermines any reliance upon the "subjective" belief that the defendants owed the plaintiff a duty to represent her interests in the transaction. *Haug,* supra.

■ Moreover, given the negligence basis of the plaintiff's malpractice claim, our review of the pleadings fails to indicate how the plaintiff has been damaged by the alleged misconduct of the defendants. The damages sought in a negligence suit may not be speculative. See Pa.R.Civ.P. 1019(f). Here, the plaintiff refers to damages she "may be forced" to pay because of the indemnification documents executed to the seller (Anthony C. Cost) of the Cost properties arising from tax ramifications. See Amended Complaint, Paragraphs 48, 75 & 97.

The documents supplied to buttress the plaintiff's damage claim (plaintiff's C.P.A. report) do not support such a contention. In other words, the plaintiff does not state with any degree of certainty whether liability exists and/or the amount of damages to be incurred by the plaintiff as a result of the Cost "buyout"; to-wit:

> D. Quantify the magnitude of the potential tax liability. At this time there is not sufficient information to adequately quantify the possible liability to Frank A. Cost and Lorraine M. Cost that could result from adjustment from the above issues[—"To attempt to quantify the magnitude of any such potential tax liability (to determine whether Lorraine M. Cost's financial interests in certain marital assets would be adequately protected in the Proposed Settlement)".].

**5.** The plaintiff missed the closing at Kotarba's office, which necessitated her appearance at Pawk's firm to execute the "buyout" documents.

Reproduced Record Nos. 271a & 275a. The only damages the C.P.A. quantified were based upon a hypothetical, the figures for which were not consistent with damages actually incurred by the plaintiff, and, therefore, were not entitled to any weight.

Accordingly, with the appellant's failure to aver facts sufficient to establish grounds for a legal malpractice suit (e.g., *duty,* breach, causation *and damages* ), we affirm the order granting the defendants' preliminary objections in the nature of a demurrer.

Order affirmed.[6]

---

**6.** The plaintiff would ask that we follow in the footsteps of the Texas Court of Appeals, in *Parker v. Carnahan,* 772 S.W.2d 151 (Tex.App. 1989), and lift the grant of preliminary objections to allow a trial on the question of whether the attorneys were negligent in failing to advise her that they were not representing her interests.

Here, unlike in *Parker,* there was a "common enterprise" being served by the defendants' handling of the "buyout" of Anthony Cost's share of the family-owned business by Frank and Charles Cost, of which the plaintiff was asked to participate as Frank's wife.

As noted by the court below, the plaintiff was not being asked to assume obligations, transfer interests, or waive claims which were not asked of other members to the purchase. Her interests were being impacted on an equal basis with other members of the "common enterprise" to purchase Anthony Cost's interest in the Cost business. She was not being singled-out, as was Ms. Parker in executing tax returns to insulate her husband from criminal conviction by the I.R.S. which (unbeknownst to her) exposed her to excessive monetary liability, with the execution of the various "buy-sell" agreements/indemnifications. The plaintiff's interest, being consonant with other players in the purchase of the Cost business, need not have been selected for independent examination and disclosure of potential liability and tax ramifications.